**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MARY ANN TURNER, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 12-00045 (RC) |
| | : | |
| v. | : | Re Document No.: 12 |
| | : | |
| UNITED STATES CAPITOL POLICE | : | |
| BOARD, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANT'S MOTION TO DISMISS**

## I. INTRODUCTION

In this employment discrimination action, the plaintiff, Mary Ann Turner, a member of

the United States Capitol Police ("USCP"), claims that she was discriminated against based on

her gender and retaliated against for complaining about discrimination. Plaintiff raises these

claims concerning a close-out performance evaluation she received that was allegedly executed

in October 2009. *See* Am. Compl. ¶ 49, ECF No. 13. Plaintiff splits her concerns about this

close-out performance evaluation into numerous separate claims concerning the evaluation itself:

a supervisor's "attempt" to interfere with the evaluation, the untimeliness of the evaluation, and

her lack of opportunity to review and refute the evaluation. *See* Am. Compl. Counts I-VIII.

Additionally, plaintiff claims that she was subjected to a hostile work environment, based on her

gender, and in retaliation for complaining about her discriminatory treatment. Am. Compl.

Counts IX & X. These claims are brought pursuant to the Congressional Accountability Act

("CAA") which in certain respects incorporates the protections of Title VII of Civil Rights Act

of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). The USCP filed a motion to dismiss largely

arguing that the plaintiff's claims are untimely because she failed to seek counseling within 180 days of the alleged discriminatory acts, the allegations concerning the performance evaluation are not actionable because a fully satisfactory evaluation is not materially adverse, and she has not raised claims rising to the level of a hostile work environment because the alleged acts were not severe or pervasive. *See* Def.'s Mot. Dismiss 9-19, ECF No. 12. For the reasons set forth below, because most of plaintiff's claims are untimely and the performance evaluation was not materially adverse, the defendant's motion to dismiss is GRANTED.

## II. FACTUAL ALLEGATIONS

The plaintiff, Mary Ann Turner, has been a member of the USCP since July 1986. Am. Compl. ¶ 3, ECF No. 13. She was promoted to the rank of detective in June 1991. Am. Compl. ¶ 8. In May 2004, plaintiff was transferred to Intelligence Section-Investigations ("IS-I"). Am. Compl. ¶ 9. In the IS-I, plaintiff's first-line supervisor was Michael Albrycht, Sergeant and Supervisory Special Agent ("SSA"). Am. Compl. ¶ 11. But, because plaintiff was detailed to the Joint Terrorism Task Force ("JTTF") between May 2004 and September 2007, she had limited contact with SSA Albrycht. Am. Compl. ¶¶ 10, 14.

In September 2007, plaintiff returned to the direct supervision of SSA Albrycht in the IS-I. Am. Compl. ¶ 18. SSA Albrycht provided plaintiff with a performance evaluation rating of "outstanding" for the years 2006 and 2007. Am. Compl. ¶¶ 19, 20. She was not evaluated in 2008. Am. Compl. ¶ 21.

On July 23, 2008, plaintiff filed a complaint with the USCP's Office of Professional Responsibility charging SSA Albrycht with gender discrimination. Am. Compl. ¶ 22. That complaint included claims concerning the following: comments SSA Albrycht made at a section briefing; a dispute plaintiff had with SSA Albrycht about a fleet car she was to drive to

Richmond, Virginia; SSA Albrycht's denial of plaintiff's request to attend the Women in Federal

Law Enforcement Conference; an incident during counseling in which SSA Albrycht told her to

remain silent; a misunderstanding between plaintiff and SSA Albrycht regarding completion of a

4th of July Plan of Action; SSA Albrycht's denial of plaintiff's request for camera and

surveillance training and training funded by other USCP units; plaintiff's exclusion from liaison

visits to other agencies; plaintiff's assignment to zones in which her area of responsibility did not

include activity; SSA Albrycht's exclusion of plaintiff from routine section activities while she

was detailed to the JTTF; SSA Albrycht's admonishment of plaintiff for parking a personally

owned vehicle in a restricted location; SSA Albrycht's comments to others implying that

plaintiff had failed to resolve a ticket; SSA Albrycht's failure to select plaintiff to fill in for CID

or to serve as acting supervisor; SSA Albrycht's verbal discipline of plaintiff at the Rayburn

House Office Building in the presence of other officers, agents and civilians; and SSA

Albrycht's failure to commend plaintiff on a matter involving international terrorism. *Id.*

On or about the same date that plaintiff filed her complaint, July 23, 2008, SSA Albrycht

was immediately detailed to another part of USCP, ordered to have no contact with plaintiff and

to stay out of her business, ordered to stay away from IS-I's offices, and ordered to have no

contact with IS-I's agents. Am. Compl. ¶¶ 23, 24.  About a year later, on August 18, 2009,

plaintiff, pursuant to a competitive vacancy announcement, applied for another position in the

Security Coordination Section of the USCP.  Am. Compl. ¶ 29.

On or about September 22, 2009, plaintiff officially learned that the Office of

Professional Responsibility had sustained her discrimination claims against SSA Albrycht.  Am.

Compl. ¶ 36.  On September 25, 2009, plaintiff was detailed to the Intelligence Section -

Analytical ("IS-A") and reported to that detail a few days later.  Am. Compl. ¶¶ 38, 39.  On or

about January 28, 2010, plaintiff was notified of her transfer to the position for which she had competed in the Security Coordination Section and for which transfer was effective as of February 21, 2010. Am. Compl. ¶¶ 39, 40. Thus, after July 23, 2008, the day on which plaintiff complained about SSA Albrycht's discrimination, he never again supervised her.

On June 13, 2011, plaintiff reviewed her personnel jacket. Am. Compl. ¶ 48. She claims that, at this point, for the first time, she found a "close-out" performance evaluation allegedly executed on October 13, 2009 by SSA Scheelar. Am. Compl. ¶ 49. A close-out rating is given to an employee when that employee leaves a unit or when the rating official leaves the unit. *See* Pl.'s Opp'n Mot. Dismiss, ECF No. 15-1 at 2 (¶ 3.14.3).[11] Close-out ratings are only maintained in the Central Personnel File and are *not* used in determining the final summary rating. *Id.* at 2 & 10. Moreover, performance reviews only remain in the Central Personnel File for three years. *Id.* at 12. The close-out rating plaintiff received in 2009 was "meets expectations" which is lower than the "outstanding" rating plaintiff had received in 2006 and 2007. *See* Am. Compl. ¶ 50. Plaintiff alleges that SSA Albrycht was involved in this lower rating (despite his not being her supervisor) because, in the personnel file, the close-out evaluation form had a post-it adhered to it addressed to SSA Scheelar from SSA Albrycht stating, "Jay, call me on this, Mike." Am. Compl. ¶ 53, 54.

---

[1]    Although these facts are not alleged in the Complaint, they are contained in a document submitted to the Court by plaintiff. *See* Pl.'s Opp'n Mot. Dismiss, ECF No. 15-1. Plaintiff urges the Court to rely upon this document in resolving the Motion to Dismiss. The Court may consider material that is subject to judicial notice on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) without converting the motion into one for summary judgment. *See* *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (explaining that in deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice). Because the exhibit contains the written policies of a public entity, the Court takes judicial notice of its contents.

Plaintiff filed this action on January 11, 2012. Compl., ECF No. 1. After plaintiff filed

an amended complaint, Am. Compl., ECF No. 13, the USCP filed a motion to dismiss. Def.'s

Mot. Dismiss, ECF No. 12. For the reasons set forth below, that motion is granted.

## III. LEGAL STANDARD

### A. Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a

complaint, or a claim therein, for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1);

*see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are

courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited

jurisdiction . . . ."). In response to such a motion, plaintiff must show that her claims lie within

"the judicial Power of the United States," U.S. CONST. art. III, § 1, and that a federal statute

grants the Court jurisdiction to hear those claims. *Micei Int'l v. Dep't of Commerce*, 613 F.3d

1147, 1151 (D.C. Cir. 2010) (citing *Mayor v. Cooper*, 73 U.S. 247, 252 (1868)); *see also Shuler

v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). If the plaintiff cannot establish both

elements, the Court must dismiss the action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

94 (1998) (citing *Ex parte McCardle*, 7 U.S. 506, 514 (1868)). When resolving a motion made

under Rule 12(b)(1), the Court will "assume the truth of all material factual allegations in the

complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences

that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139

(D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

### B. Cause of Action

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The

motion does not test a plaintiff's ultimate likelihood of success on the merits, but only forces the court to determine whether a plaintiff has properly stated a claim. *ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 2001). The complaint must set forth a short and plain statement of the claim, to give defendants fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

The court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## IV. ANALYSIS

Plaintiff raises gender discrimination and retaliation claims concerning a close-out performance evaluation she received that was allegedly executed in October 2009. Additionally, plaintiff claims that she was subjected to a hostile work environment, based on her gender, and in

retaliation for complaining about her discriminatory treatment. Each of these claims is assessed below.

## A. Plaintiff's Performance Evaluation Claims

Plaintiff splits her concerns about the close-out performance evaluation into numerous separate claims concerning the evaluation itself: a supervisor's "attempt" to interfere with the evaluation, the untimeliness of the evaluation, and her lack of opportunity to review and refute the evaluation. *See* Am. Compl. Counts I-VIII, ECF No. 13. But, no matter how plaintiff characterizes these claims, they all fail because none of the USCP's actions concerning the evaluation are sufficiently adverse to constitute unlawful discrimination or retaliation.

### 1. Discrimination Claim

Plaintiff alleges that she received a close-out performance evaluation, allegedly executed on October 13, 2009, in which her performance was rated as "meets expectations," which she claims is a lower overall rating than the "outstanding" she received in 2006 and 2007. Am. Compl. ¶¶ 49, 50, ECF No. 13. She claims that this lower rating was discriminatory, based on her gender. Am. Compl. Counts I, III, V, VII. She bases this claim not just on the rating itself and SSA Albrycht's interference in its preparation, but also on SSA Albrycht's "attempt" to interfere with the rating, the fact that it was provided to her on an untimely basis, and that she was deprived of an opportunity to review and refute its contents. *Id.* Plaintiff does not allege that she suffered any financial harm as a result of the rating or that she lost out on any specific professional opportunities because of it. In fact, plaintiff alleges that she did not even learn that the rating existed until months after it was purportedly prepared. *See* Am. Compl. ¶¶ 48, 49 (close-out evaluation purportedly executed on October 13, 2009, but plaintiff did not locate it in her personnel jacket until June 13, 2011). Accordingly, neither the "meets expectations" close-

out rating, nor the alleged procedural issues leading to its issuance constitute unlawful adverse employment actions.

To establish a prima facie case of gender discrimination under Title VII (and thus under the CAA), the plaintiff must show that "(1) [she] is a member of a protected class; (2) [she] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *see also Stewart v. Ashcroft*, 352 F.3d 422, 428 (D.C. Cir. 2003); *Carroll v. England*, 321 F. Supp. 2d 58, 68 (D.D.C. 2004). The USCP argues that the close-out performance evaluation did not constitute an adverse employment action in the context of a discrimination claim. The court agrees.

In the context of discrimination claims, the D.C. Circuit has held that, in the absence of a diminution in pay or benefits, an employee does "not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Brown*, 199 F.3d at 457. "Mere idiosyncrasies of personal preference are not sufficient to state an injury." *Id.* Likewise, "[m]inor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like'" are not actionable. *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)). The Supreme "Court specifically identified 'discharge, demotion, or undesirable reassignment' as three examples of the kind of 'tangible employment action' for which an employee may bring a vicarious liability suit against her employer under Title VII." *Brown,* 199 F.3d at 457 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 765 (1998)). There is a "thick body of precedent . . . refut[ing] the notion that formal criticism or poor performance evaluations are necessarily adverse actions."

8

*Id.* at 458. This is because "[p]erformance evaluations are likely to be '[i]nterlocutory or mediate decisions having no immediate effect upon employment'" whose result "is often speculative, making it difficult to remedy." *Russell*, 257 F.3d at 818 (quoting *Mungin v. Katten, Muchin & Zavis*, 116 F.3d 1549, 155 (D.C. Cir. 1997)).

The plaintiff alleges that the close-out performance evaluation of "meets expectations" was discriminatory based on her gender. But she does not allege that she was deprived of a bonus, salary increase, or a promotion as a result of it. As the USCP's evaluation policies state, close-out evaluations are not used in determining the employee's final summary rating. *See* Pl.'s Opp'n Mot. Dismiss, ECF No. 15-1 at 2 (¶ 3.14.3). As such, it is hard to imagine how it could have contributed to bonus or promotion decisions. And plaintiff has not challenged (at least in this action) any final summary ratings she received. Similarly, plaintiff has not alleged any concrete facts supporting a claim that the summary rating of "meets expectations" – that is not adverse in an absolute sense – hindered any future employment opportunities. Again, it is hard to imagine how it could have. According to plaintiff's own allegations, the close-out rating at issue was not in her personnel file until shortly before June 2011 (despite it being dated October 2009). Am. Compl. ¶¶ 48, 49. Pursuant to the USCP's performance evaluation policies, it would have been removed from her personnel file three years after execution – *i.e.*, October 2012. Pl.'s Opp. Mot. Dismiss, ECF No. 15-1 at 12. Thus, for the several months the close-out rating was located in plaintiff's personnel file, the plaintiff has not identified any specific instances of it having impacted her professional opportunities and, because it has now been removed from the file, it cannot have any impact in the future.[2] Thus, without any of these

_____

[2] The Court expects USCP's counsel to confirm that the USCP complied with its retention policy.

tangible injuries, plaintiff's close-out evaluation does not constitute an actionable adverse

employment action.

As such, because plaintiff's close-out performance rating of "meets expectations" does

not constitute an adverse employment action, she cannot base a discrimination claim on it.[3]

*Brown*, 199 F.3d at 458 (explaining that while "fully satisfactory" rating may have been lower

than normal for plaintiff, it was not adverse in an absolute sense and, thus, not actionable).

Consequently, her gender discrimination claims based on the close-out evaluation fail and are

dismissed.

## 2. Retaliation Claim

Plaintiff also claims that she was rated "meets expectations" in the close-out performance

evaluation in retaliation for having previously complained about the discriminatory treatment she

allegedly endured. But for the same reasons her discrimination claims concerning this close-out

evaluation fail, her retaliation claims fail as well.

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged

in a statutorily protected activity, (2) a reasonable employee would have found the challenged

action materially adverse, and (3) there existed a causal connection between the protected

activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S.

53, 67-69 (2006); *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). In the retaliation

context, the term "adverse action" "encompass[es] a broader sweep of actions than those in a

---

[3]       And, if the claims based on the evaluation itself are not actionable, the claims
based on alleged procedural deficiencies and attempted interference leading up to it are not
either. *See Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (holding that a delay in
providing a performance evaluation did not constitute adverse employment action absent adverse
effects caused by delay). In this Circuit, an employer may cure an adverse employment action
before the action is subject to litigation. *Id.* Accordingly, it would defy logic to conclude that an
"attempted" but unsuccessful adverse action could be actionable.

pure discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008).[4]

Thus, "[r]etaliation claims are 'not limited to discriminatory actions that affect the terms and

conditions of employment' and may extend to harms that are not workplace-related or

employment-related so long as 'a reasonable employee would have found the challenged action

materially adverse.'" *Id.* (quoting *Burlington*, 548 U.S. at 64, 68). "[I]n this context [material

adversity] means it well might have 'dissuaded a reasonable worker from making or supporting a

charge of discrimination.'" *Burlington*, 548 U.S. at 67-68. The plaintiff's burden is not great: he

"need only establish facts adequate to permit an inference of retaliatory motive." *Forman v.

Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

The USCP argues that plaintiff's retaliation claim fails because the "meets expectations"

close-out evaluation does not constitute the materially adverse action required to make out a

retaliation claim. Again, the Court agrees.

As set forth in detail above, there is no allegation that the rating caused plaintiff to miss

out on a bonus, salary increase, or promotion. Additionally, she has not plausibly alleged facts

indicating that the close-out performance evaluation hindered her professional opportunities.

Nor has she explained how, given the nature of close-out evaluations as set forth in the relevant

USCP policies, either of these things could have occurred. Accordingly, because plaintiff has

not alleged facts supporting a claim that she suffered a materially adverse action – *i.e.,* one that

might have dissuaded a reasonable worker from making or supporting a charge of discrimination

---

[4]        Plaintiff utilizes a significant portion of her opposition brief to argue that the
applicable standard to be applied to Congressional Accountability Act retaliation claims is the
one established by the Board of Directors of the Office of Compliance. Pl.'s Opp. Mot. Dismiss
21-30, ECF No. 15 (prohibiting "any adverse treatment that is based on a retaliatory motive and
is reasonably likely to deter a charging party or others from engaging in protected activity"). But
nowhere does the plaintiff explain how that standard differs, if at all, from this Circuit's
application of the *Burlington* standard. Regardless, to the extent there is any difference in the
standards, plaintiff's retaliation claims fail under either formulation.

– her retaliation claims fail as well.  *See, e.g. Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir.

2009) (finding the lowering of employee's performance evaluation from "Outstanding" to

"Excellent" to "Fully Effective" not materially adverse because downgrades were not attached to

financial harms despite plaintiff's conclusory allegation that she was denied promotional and

bonus opportunities); *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (finding that

a performance rating of "not achieved" was not materially adverse because plaintiff failed to

produce evidence that the rating could affect his position, grade, level, salary, or promotion

opportunities).[5]

### B.  Plaintiff's Hostile Work Environment Claims

Plaintiff claims that she was subjected to a hostile work environment, based on her

gender, and in retaliation for complaining about her discriminatory treatment.  *See* Am. Compl.

Counts IX & X.  The USCP principally argues that these claims are untimely.  For the reasons

_____

[5]        Defendant also argues that plaintiff's retaliation claim fails because she has failed
to plausibly allege that her protected activity was the cause of her "meets expectations" rating
given the lack of temporal proximity between when she filed her discrimination complaint on
July 23, 2008 and when the close-out performance evaluation was allegedly executed in October
2009 (15 months).  *See* Def.'s Mot. Dismiss 15-16, ECF No. 12.  For purposes of analyzing
temporal proximity, the courts in this Circuit look at not only the filing of the complaint, but also
subsequent protected activity.  *See Hamilton v. Geithner*, 666 F.3d 1344, 1358 (D.C. Cir. 2012);
*Holcomb v. Powell,* 433 F.3d 889, 903 (D.C. Cir. 2006); *Singletary v. District of Columbia*, 351
F.3d 519, 524 (D.C. Cir. 2003).  Moreover, the relevant anti-discrimination statutes do not say
that retaliation must be immediate to be actionable.  *Kalinoski v. Gutierrez*, 435 F. Supp. 2d 55,
70 (D.D.C. 2006).  And the plaintiff's burden at the pleading stage "is not great."  *Id.*
Additionally, although temporal proximity is one way for a plaintiff to meet her burden of
establishing a *prima facie* case, courts will also look at additional evidence supporting an
inference of causation beyond temporal proximity alone.  *Hamilton*, 666 F.3d at 1358.  In this
case, according to plaintiff's allegations which are taken as true at this stage, SSA Albrycht was
officially found to have discriminated against plaintiff in September 2009. Am. Compl.  ¶ 36.
He also interfered with her performance evaluation in October 2009, only one month later. *Id.* ¶
49.  Not to mention that he also brought criminal and administrative charges against plaintiff that
her superiors implied were baseless around the same time. *Id.* ¶¶ 26, 34, 35.  A reasonable juror
could infer that a finding of discrimination could cause retaliatory hostility to the same, or
greater extent, than the original complaint of discrimination.  Consequently, the Court concludes
that defendant's temporal proximity argument fails at this stage of the litigation.

set forth below, the Court agrees and dismisses the gender-based claim as untimely. But the retaliatory hostile work environment claim fails because it does not allege severe or pervasive harassment.

### 1. Statutory Framework for Exhaustion of Administrative Remedies

The plaintiff brings her claims pursuant to the Congressional Accountability Act. Am. Compl. ¶¶ 1- 6. Through the CAA, "Congress extended the protections of Title VII of the Civil Rights Act of 1964, as well as ten other remedial federal statutes, to employees of the legislative branch." *Blackmon-Malloy v. Unites States Capitol Police Bd.*, 575 F.3d 699, 701 (D.C. Cir. 2009). "In Subchapter IV Congress specified a three-step process that requires counseling and mediation before an employee may file a complaint seeking administrative or judicial relief." *Id.* To "commence a proceeding," an employee must request counseling within 180 days of the date of the alleged violation of law. 2 U.S.C. § 1402(a); *Blackmon-Malloy*, 575 F.3d at 702. Because the relevant CAA provisions provide "that a district court has 'jurisdiction over [appropriate actions] commenced . . . by a covered employee who has completed counseling . . . and mediation'" and a "civil action may be commenced by a covered employee only to seek redress for a violation for which the employee has completed counseling and mediation," the D.C. Circuit has held that the CAA's administrative exhaustion requirement is jurisdictional. *Id.* at 705-706; *accord Gordon v. Office of the Architect of the Capitol*, 928 F. Supp. 2d 196, n.6 (D.D.C. 2013); *Bradshaw v. Office of the Architect of the Capitol*, 856 F. Supp. 2d 126, 135 (D.D.C. 2012).

The Supreme Court's opinion in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), requires that a plaintiff file a charge for each separate discrete act of discrimination within the required period of time. As set forth above, in the case of claims under the CAA, a

claimant must seek counseling within 180 days of the discriminatory act.  But with respect to

claims of hostile work environment, which are different in kind because they involve repeated

conduct that does not fully manifest itself on any particular day, a claim is timely so long as one

of the acts contributing to the hostile work environment occurred within the 180 day filing

period.  *Morgan*, 536 U.S. at 116-17.  Because the plaintiff did not seek counseling until June 13,

2011, Am. Compl. ¶ 4, she must establish that one of the acts contributing to the alleged hostile

work environment occurred within 180 days of that date, *i.e.,* approximately December 15, 2010.

Otherwise, the hostile work environment claims are untimely pursuant to the CAA's statutory

requirement.

## 2.  Timeliness of Plaintiff's Gender-Based and Retaliatory Hostile Work Environment Claims

As set forth above, in order for her claims to be timely, plaintiff must establish that one of

the acts contributing to the alleged hostile work environment occurred within 180 days of June

13, 2011, *i.e.,* after December 15, 2010.  For the reasons set forth below, she cannot do so.

Accordingly, her hostile work environment claims are dismissed as untimely.

In order to properly assess plaintiff's hostile work environment claims, a few basic

principles must be kept in mind.  First, the standards for judging a hostile work environment

claim are sufficiently demanding to ensure that Title VII does not become a "general civility

code for the American workplace."  *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 81

(1998).  Thus, not everything that makes an employee unhappy would necessarily be part of a

hostile work environment claim.  Second, a "plaintiff 'must always prove that the conduct at

issue was not merely tinged with offensive . . . connotations, but actually constituted

discrimination . . . because of' the employee's protected status."  *Peters v. District of Columbia*,

873 F. Supp. 2d 158, 188-89 (D.D.C. 2012) (quoting *Oncale*, 523 U.S. at 81).  "It is therefore

important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination." *Id.* at 189. Finally, in order for allegations to qualify as "part of the same actionable hostile work environment claim," they must be "adequately linked into a coherent hostile environment claim" by "involv[ing] the same type of employment actions, occurr[ing] relatively frequently, and [being] perpetrated by the same managers." *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011) (internal citations omitted).[6] With these principles in mind, the Court examines the timeliness of plaintiff's hostile work environment claim.

### a. Retaliatory Hostile Work Environment Claim

The Court begins with the retaliatory hostile work environment claim first because that is the easier claim to dismiss. Plaintiff alleges that she engaged in protected activity on July 23, 2008, by submitting a complaint with the Office of Professional Responsibility charging SSA Albrycht with discrimination based on the plaintiff's gender. Am. Compl. ¶ 22. But, based on that complaint, SSA Albrycht was immediately detailed away from supervising plaintiff and never supervised her again. Am. Compl. ¶¶ 24, 38-42.

Plaintiff complains that she suffered harassment from SSA Albrycht based on a long list of acts to which he allegedly subjected her. *See* Am. Compl. ¶¶ 22.a, 22.p. But those actions took place *before* plaintiff filed her discrimination complaint. Consequently, they could not have been retaliatory. *Lewis v. District of Columbia,* 653 F. Supp. 2d 64, 79 (D.D.C. 2009) ("The fact

---

[6] Defendant argues that the close-out performance evaluation cannot be considered as part of the hostile work environment claim because it is a discrete act. *See* Def.'s Mot. Dismiss 18, ECF No. 12. But this Circuit has rejected that argument. *See Baird*, 662 F.3d at 1252 ("Thus, although a plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard, neither can a court dismiss a hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own.").

that the allegedly retaliatory actions preceded the protected activity precludes a determination

that the protected activity caused the defendant to retaliate against the plaintiff."); *see also*

*Bryant v. Brownlee*, 265 F. Supp. 2d 52, 70 (D.D.C. 2003) (same).

Thus, the only act by SSA Albrycht of which plaintiff complains that post-dates the

protected activity concerns his alleged interference with the close-out evaluation.[7]  But, absent

extreme circumstances, a single act is not sufficiently severe or pervasive to constitute a hostile

work environment.  *See, e.g., Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) ("Except

in extreme circumstances, courts have refused to hold that one incident is so severe to constitute

a hostile work environment.").  This case does not present such an extreme circumstance.  As set

forth above, the "meets expectations" close-out evaluation was not materially adverse, much less

an extreme single act that could constitute a hostile work environment.  Hence, plaintiff's

retaliatory hostile work environment claim, Am. Compl. Count X, is dismissed.

### b.  *Gender-Based Hostile Work Environment Claim*

Contrary to the retaliatory hostile work environment claims, the gender-based hostile

work environment claims could conceivably include all of SSA Albrycht's actions set forth in

paragraphs 22.a - 22.p of the Amended Complaint.  These events, however, took place before

plaintiff filed her discrimination complaint with the Office of Professional Responsibility on July

23, 2008.  Am. Compl. ¶ 22.  Accordingly, these claims on their own would be untimely

because plaintiff did not seek counseling pursuant to the CAA's mandatory scheme until June

13, 2011, almost three years later.  Am. Compl. ¶ 4.  Thus, for plaintiff's gender-based hostile

---

[7]        Plaintiff also seems to complain about being prohibited from applying for a detail position in the Behavioral Analyst Unit of the FBI.  Am. Compl. ¶ 56.  The complaint does not make clear whether plaintiff felt this act was retaliatory (rather than just unfair) or whether she believes SSA Albrycht was involved in that decision.  Regardless, even if this event were included as part of plaintiff's alleged retaliatory hostile work environment claim, the Court's severe or pervasive analysis would not result in a different outcome.

work environment claim to be timely, she must identify an act contributing to the alleged hostile work environment that occurred after December 15, 2010.

The only allegedly discriminatory act plaintiff identifies that arguably took place within this time frame is the "meets expectations" close-out evaluation. Although this evaluation was purportedly executed in October of 2009, plaintiff suggests it might have been prepared later. Moreover, plaintiff claims that she did not discover the evaluation until June 13, 2011. *See* Am. Compl. ¶¶ 48, 49. Accordingly, for purposes of this motion only, the Court will assume that this evaluation can be considered as having occurred within the 180 day window before counseling.

But, in order for this evaluation to make the prior hostile work environment claims timely, plaintiff must demonstrate that the evaluation was part of, and contributed to, the same hostile work environment. For the reasons set forth below, the Court concludes it was not.

As set forth above, in order for allegations to qualify as "part of the same actionable hostile work environment claim," they must be "adequately linked into a coherent hostile environment claim" by "involv[ing] the same type of employment actions, occurr[ing] relatively frequently, and [being] perpetrated by the same managers." *Baird*, 662 F.3d at 1251. Moreover, intervening actions by the employer can sever earlier incidents from more recent incidents. *See, e.g.*, *Vickers v. Powell*, 493 F.3d 186, 199 (D.C. Cir. 2007). The Court finds that the close-out performance evaluation is not part of same actionable hostile work environment as the earlier claims. Thus, the plaintiff's gender-based hostile work environment claims are untimely, because the plaintiff has failed to identify an act contributing to the alleged hostile work environment that occurred after December 15, 2010.

First, the close-out evaluation occurred remotely in time from the earlier acts. The earlier acts took place no later than July 23, 2008, but the close-out performance evaluation took place

no earlier than October 2009 (and plaintiff suggests later), fifteen months later. Second, the

close-out performance evaluation did not involve the same type of employment action that was

involved in plaintiff's prior complaint. To the contrary, the plaintiff complains that the close-out

performance evaluation was not as favorable as the "outstanding" performance evaluations she

previously received in 2006 and 2007. Third, plaintiff was unaware of the close-out

performance evaluation until June 2011, almost three years after SSA Albrycht ceased being her

supervisor. *See, e.g., Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1046 (7th Cir. 2000)

("Mean-spirited or derogatory behavior of which a plaintiff is unaware, and thus never

experiences, is not 'harassment' of the plaintiff (severe, pervasive, or other)."); *Burnett v. Tyco

Corp.*, 203 F.3d 980, 981 (6th Cir. 2000) (explaining that hostile actions of which plaintiff is

unaware are not relevant to hostile work environment claim); *Dudley v. WMATA*, 924 F. Supp.

2d 141, 168 (D.D.C. 2013) (same); *Hutchinson v. Holder*, 815 F. Supp. 2d 303, 321 (D.D.C.

2011) (same). Because conduct that the plaintiff does not perceive as abusive cannot alter the

terms and conditions of her employment, conduct that the plaintiff did not know about cannot be

used to establish that she was subjected to a hostile work environment. *Hutchinson*, 815 F. Supp.

2d at 321. Finally, because the USCP removed SSA Albrycht from plaintiff's supervision and,

ultimately found that he had discriminated against her, these intervening actions sever the earlier

incidents from the more recent incident.

In the end, based on all of the above reasons combined, the Court finds that the

close-out performance evaluation is not related to the earlier alleged acts purported to constitute

a hostile work environment. As such, because plaintiff has failed to identify an act contributing

to the alleged gender-based hostile work environment that occurred after December 15, 2010, her

claims are untimely and are dismissed. If the plaintiff believed SSA Albrycht subjected her to a

gender-based hostile work environment while he supervised her, she needed to seek counseling at that time (she did, in fact, make such allegations to the Office of Professional Responsibility). She cannot now re-start the clock, three years after SSA Albrycht ceased being her supervisor, by claiming to have discovered an act, unrelated to SSA Albrycht's direct supervision of her, that probably took place two years before she sought counseling and, of which, she was previously unaware.

## V. CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is GRANTED. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 30, 2013                              RUDOLPH CONTRERAS
                                                        United States District Judge